CHARLES SCHOCK,

*vs.*

ALLEN V. LESLEY.

*Sussex, Mch. T. 1871.*

L. sold a farm to S. taking, as the consideration, an assignment of a mortgage by a third party for $4500, payable in nine equal installments. S. also gave his own bond and mortgage on the land purchased from Lesley for $500, to secure the first three installments of the $4500 mortgage, which L. gave S. a power of attorney to collect. At the time of the assignment there was accrued interest due upon the assigned mortgage amounting to $405. The $1500 was collected from S. and then the mortgage foreclosed and the land sold under execution, yielding an amount. applicable to the mortgage, of less than the balance due. S. claimed to be reimbursed, out of the proceeds of sale, both the $1500 paid and the accrued interest. *Held,* that upon the terms of the contract, S. was bound as principal for the $1500, but that the accrued interest was absolutely reserved by him and that, the proceeds of the execution being applicable to the interest in the order of time, he was entitled to receive it out of them.

The party in whose favor a decree was made for the payment of money, having failed to pay costs decreed against him, in previous suits concerning the same subject matter between the parties, the collection of a like amount of the decree would on proper application be stayed until the costs should be paid.

*Quere.* Where the depositions of two witnesses are taken under one commission, is it competent for the party, in whose behalf they were taken, to read the deposition of one witness without that of the other witness ?

BILE IN EQUITY FOR AN ACCOUNT.—The material facts were not in dispute, the question discussed arising upon the construction of a certain contract. It appeared that on the 22d of August, 1859, Allen V. Lesley sold and conveyed to Charles Schock a farm in Kent county for the consideration of which he took from Schock an

assignment of a bond of John Fleming with a mortgage for $4,500 upon a farm in Sussex county, which Schock had sold to Fleming. This bond and mortgage was payable in nine annual installments of $500 each with interest, the first falling due May 1st, 1859. Lesley also took Schock's bond and mortgage of the Kent county farm for $1500, which was made payable in annual installments of $500 each, these installments falling due so as to correspond with the first three installments of the Fleming bond and mortgage. At the same time Lesley gave Schock a power of attorney as stipulated in the contract authorizing him to collect the first three installments of the Fleming bond and mortgage.*

Subsequently Schock was compelled, by process on his mortgage, to pay the $1500 secured by it and the interest, leaving due to Lesley, a balance of principal amounting to $3000, together with the unpaid interest. While Schock was in the course of paying the installments on his mortgage, he attempted, by legal process, under the judgment upon Fleming's bond, to collect, by sale of the land mortgaged by Fleming to Schock, the first three installments of that bond, being the installments corresponding in sums and terms of payment with those in the mortgage given by himself. In this attempt he was enjoined under proceedings in the Court of Chancery and Court of Appeals.

While these proceedings were pending, Schock also took proceedings in chancery to restrain Lesley from collecting the $1,500 mortgage. His first application for an injunction was by petition to restrain the collection of the

---

*The terms of this contract and power of attorney are very fully stated in the report of the case in which their construction was settled by the Court of Errors and Appeals. 3 *Houst.* 130. As that construction was held conclusive in the present case, and is stated in the opinion, it is not deemed necessary to repeat here the very full statement made in the former report. Upon examination of the papers in the three cases the contract and power of attorney could not be found, otherwise they would have been inserted here.

13—DEL. CH. IV.

second installment and interest, but the injunction was dissolved, for want of a bill, at the September Term, 1861, and Schock paid the execution for that installment. In February, 1862, at suit of Schock, the second time, Lesley was restrained from the collection of the third installment. The suits in Chancery were both heard in the Court of Chancery and decrees entered in favor of Schock.* Both cases were afterwards heard in the Court of Errors and Appeals and the construction of the contract and power of attorney then settled. The decrees were reversed and in the first case Schock was perpetually enjoined from proceeding against Fleming, upon the judgment or mortgage assigned to Lesley, or taking any proceedings upon them to collect any part of the debt thereby secured by the sale of the lands and tenements embraced in the mortgage. In the other case, the injunction against Lesley, restraining him from collecting from Schock $1,500 mortgage, was dissolved. These cases on appeal were very fully reported,† and reference may be made to them for any fuller statement of the facts and the course of this protracted litigation, which may be desired, in addition to what is here given.

Lesley, having received the $1500 from Schock, then waited until the last installment of the Fleming mortgage fell due, after which he obtained judgment in the *scire facias* on the mortgage for $6717.79 and, under a *levari facias* on this judgment, the mortgaged premises were sold. Out of the proceeds of this sale, there was applied to the mortgage $3994.66. This sum fell short of paying the balance due Lesley after crediting the $1500 collected from Schock, that balance being about $4,470.

The present bill was filed, first, to compel Lesley to reimburse to Schock out of the proceeds of sale the $1500

* 2 Del. Ch. Rep. 304.

† 3 Houst. 130.

The question of evidence.

collected from Schock; secondly, to compel him to pay to Schock, out of the proceeds, $405, being the accrued interest, upon the Fleming mortgage, due at the date of its assignment to Lesley and reserved in the assignment.

For the complainant the depositions of two witnesses were taken under one commission and at the hearing the solicitor for the complainant read the deposition of one witness but did not offer the other.

*Moore,* for the defendant, insisted that the deposition taken under the same commission be read. The complainant by reading one deposition has put the whole in evidence. He cannot read one without the other as he could not read part of the deposition of one witness and omit the rest. The testimony taken under one commission is entire and the party taking it cannot select. Besides, so far as the cross examination is concerned, the deponent is our witness, and we are entitled to read the whole in explanation of answers to cross examination. The whole is published and part of the record.

*Layton,* for the complainant.

A party at law having summoned a witness may decline to examine him. So he may do here. We might suppress the deposition.

*Spruance,* for the defendant, in reply.

Even if the complainant might suppress his own deposition he did not do so, but produced and partly read it. The refusal to read a deposition taken is a surprise, but for his examining the witness, we might have done so. At law, if a witness is dismissed, the adverse party has the opportunity to call him.

The decision of the point raised was, by agreement, reserved until the hearing.*

The case was argued at the March Term, 1771.

*Layton*, for the complainant.

The decision of the Court of Appeals in *Lesley vs. Schock and Schock vs. Lesley* 3 *Houst.* 130, did not overrule our construction of the contract. The decision was on the ground that Schock could not proceed on the mortgage until the last installment should become due, there being no provision for forfeiture. So far their ground was tenable. If the Court went beyond that, their opinion, to that extent, was *obiter dictum*, binding neither this Court nor themselves.

The power given to Schock was to "collect" which includes the use of legal process. Schock was entitled under a fair construction of the contract and the power to have back again the installments which he paid. But apart from the question of construction, having paid them as surety he was subrogated to Lesley's right to collect them under the Fleming mortgage. Defendant, having by his own act, prevented the complainant from reimbursing himself and having collected the first three installments, he is now liable to refund to the complainant the $1500 collected from him.

The well settled principles of construction require the interpretation of this contract now contended for.

With respect to the accrued interest, the provision of

---

*An examination of the record and the papers in the case has failed to disclose any subsequent reference to this matter. The Chancellor's notes state that the hearing was adjourned at this point on account of sickness in the family of one of the counsel and that "the question raised, as to the deposition not read, is waived until the hearing." It has seemed proper to report the fact of the objection and that the question raised was treated as an open one.

the contract is an absolute reservation of the $405 out of the proceeds of the mortgage whenever collected.

*Moore and Spruance,* for the defendant.

We are first to seek the main purpose of the contract. To that must be subordinated minor provisions. They must be construed so as to effect the main purpose which was the sale of the farm to the defendant at the stipulated price of $4,500. For a part of this sum the Schock mortgage was taken as an additional security, to secure his own debt, and the complainant was in no sense a surety.

The decision of the Court of Appeals, in the two cases between these parties, reported as heard in the appeals, 3 *Houst.* 130, covers the present case fully, and was in no sense *obiter dictum.* The points now relied on were argued and decided.

THE CHANCELLOR :—

Let us consider in the first instance the complainant's claim to be reimbursed the $500 ; collected under the mortgage given by him.

The bill claims that, in giving the $1500 mortgage, Schock became, according to the true construction of the agreement and power of attorney which accompanied the transaction, a surety to Lesley for the first three instalments of the Fleming bond and mortgage, and, upon payment of them, was entitled to be subrogated to Lesley's right to collect them and was even authorized under the power to collect them in advance. On the other hand, the construction, insisted upon by Lesley, has been, that Schock's mortgage was given as a collateral security for the whole debt under Fleming's mortgage, entitling Lesley to collect the first three installments of $1500 out of Schock, and to hold the land mortgaged by Fleming for

the balance, so as in effect to make the two mortgages, taken together, a security for the debt of $4500.

The latter is the construction which has already been given to this transaction, by the Court of Appeals, in the former suits between the same parties. Those suits arose out of the attempt made by Schock to use the power of attorney for collecting by legal process the first three installments under the Fleming mortgage. The Court of Appeals restrained Schock from such proceeding, even though, before the final decree was reached Schock, had paid the $1500; and the ground assigned for their opinion was that Schock's mortgage stood as an additional security for the whole Fleming debt of $4500, so that, in effect, Lesley held Schock's mortgage as a security for the first three installments of the Fleming debt and held the Fleming farm for the balance. The controversy in those cases turned much upon the effect of the word "collect" in the power of attorney given by Lesley to Schock, which Schock's counsel insisted included any legal process of collection, and, in effect, entitled Schock absolutely to those installments, whatever might be the effect upon the ultimate security of the whole $4500 debt. But the Court held that, on a fair construction, the power to collect applied only to the receipt of voluntary payments by Fleming and did not warrant any legal process, on the bond or mortgage, which might prejudice Lesley's ultimate security for the whole debt of $4500, to which end the Court considered the Schock mortgage and the power of attorney subordinate.

This is the substance of the opinion of the Court of Appeals as delivered by Judge Wootten. I am bound by the construction thus given to this transaction, and accordingly must hold that Lesley was entitled to receive out of the proceeds of sale of the Fleming farm the whole balance unpaid of the $4500 and its interest before

Schock would be reimbursed the $1500 he had paid Lesley. Now it appears that the proceeds of sale of the Fleming farm ($3994.66) are insufficient to pay the balance due Lesley, even over and above the $1500 received upon Schock's mortgage. He is therefore not bound, under the decision of the Court of Appeals to refund to Schock the $1500.

Schock had under the arrangement, two chances of being reimbursed the $1500 paid by him. One was by obtaining voluntary payments from Fleming under the power of attorney. The other was the chance that the Fleming farm might sell for enough to pay Lesley the whole debt of $4,500 which would have entitled Schock to receive back the $1,500. Both these chances are gone and no remedy remains to Schock except upon Fleming's personal responsibility. We pass now to the other object of the bill.

It appears that, at the date of Lesley's sale to Schock, and the agreement to transfer to him the Fleming mortgage, 22 August, 1859, there was interest in arrear upon that to the amount of $405, which interest was collected as part of the proceeds of the sale of the Fleming farm under the mortgage, and came to the hands of Lesley. The Sheriff paid to Lesley $3,994.66 as the net proceeds of the sale. It is true that this sum did not pay Lesley the whole of the debt and interest, but it must be considered as applicable to the interest in the order of time in which it accrued to the $405 originally due in *preference* to interest subsequently accruing. The complainant claims that this $405 of interest in arrear at the date of the agreement to assign the Fleming mortgage, was, by the terms of the agreement, reserved to him absolutely— that it was not at all subject to the arrangement for securing the $4,500 to Lesley—no more so than if the accrued interest had not been assigned at all ; and that therefore, Lesley having received it, is bound to pay it to Schock.

I am of opinion that this position is well taken. Upon a fair construction of the agreement and power of attorney, Lesley accepted the Fleming mortgage as a sufficient security to the amount of $3000, with Schock's mortgage for $1500, to make good the whole debt, $4500. *He took the risk* of the Fleming farm being worth $3000 and the interest subsequently accruing, and agreed that Schock should reserve *for his own* use, absolutely and in all events, the previously accrued interest,—the $405. I cannot read the agreement of August, 22, 1859 and the power in any other intelligible sense. The agreement, after providing for the assignment by Schock of the Fleming mortgage and for his giving his own mortgage for $1500 collaterally, proceeds to stipulate on Lesley's part that he shall give to Schock a power of attorney authorizing him to collect "the install- " ments due on the said assigned mortgage," *i. e.*, the Fleming mortgage, which, as explained by the agreement must be taken to refer to the first three installments :—and also, "the interest due and to become due thereon," which includes the $405. The agreement then proceeds to direct how the installments and interest, so to be collected, shall be applied, in these words; "and to appropriate the same to " the payment of the aforesaid mortgage of $1500, until the " whole sum of $1500, and the interest as aforesaid, is fully " paid and satisfied."

There is a manifest inaccuracy of language here, in including the interest in arrear in the appropriation to the payment of the $1500 ; for the power covered enough exclusive of the interest in arrear, to pay the $1500 and its interest. The first three installments of the Fleming mortgage, and the interest to grow due, exactly covered the $1500 mortgage and its interest. And besides, the interest in arrear is in the next clause expressly and absolutely reserved to Schock. The words are, "and that the said " Schock shall retain and receive and take *for his own use* " all the interest now due upon the aforesaid mortgage of

" John Fleming from the date of said mortgage until the
" date of the said instrument of writing," *i. e.*, the power.

The power is still more explicit and conclusive. It thus
describes the installments and interest which Schock is
authorized to collect and the mode of their application.
They are sums of money "which are due or will become due
" on a certain mortgage, &c.," *i. e.*, the Fleming mortgage
" as follows, to wit: $500 the principal and $450 the interest,
" $45 *of which said interest* to be paid to the said Lesley,
" with the aforesaid $500 principal, on or before the
" 1st day of March, A. D. 1860." Here it appears that,
by the 1st day of March, A. D. 1860, the March
next following the agreement, there would be inter-
est due to the amount of $450 which included the $405
in arrear at the date of the agreement and $45 to accrue
after the date of the agreement. Now observe how care-
fully the power divides this $450 of interest between Lesley
and Schock, " $45.00 of which said interest to be paid to
" the said Lesley " is its direction, and then after refer-
ring to the two following installments payable in March
1861 and March 1862 with their interest and directing
that the sums thus authorized to be collected by Schock,
he shall apply in paying the $1500 mortgage given by him,
the power excepts the $405, that part of the interest ac-
crued before the agreement, in these words, " except the
" sum of $405 interest which the said Schock is hereby au-
" thorized *to appropriate and apply to his own use.*" It is
difficult to see how the intent of the parties could have
been more clearly manifested that this interest was not to
pass to Lesley in any event. I say not in any event, be-
cause, clearly, if this $405 of interest in arrear was in any
contingency to be applied to make up the $4500 debt, he
would not, by the power of attorney, have authorized
Schock to collect it without some security for its due
application, such as he was so careful to take for the
$1500, the amount of the three installments and the future
interest on them.

14—DEL. CH. IV.

It was argued that Schock was to take the $405 only in the event of its being obtained from Fleming by a voluntary payment under the power ; that the reservation of the accrued interest was to have no effect as to money raised by sale under the mortgage.    But, upon a fair construction of the agreement, the reservation of the accrued interest was absolute and Schock was to take it however it might be raised, whether by voluntary payment or by sale under the mortgage.   The terms of the reservation in the agreement are general and not specially connected to the power of attorney.    It is in a distinct paragraph running thus : " And that the said Schock " shall retain and receive and take for his own use all the " interest now due upon the aforesaid mortgage, &c." There could be no sensible reason why the disposal of the accrued interest as between Schock and Lesley should depend upon the mode in which it should happen to be paid.

Another argument still more earnestly pressed was that the primary object of this whole arrangement was to secure to Lesley the $4500, to effect which object, it was insisted, he must be allowed to retain the $405 towards making up the deficiency of the Fleming farm, to raise the $3000 and its interest, remaining after Schock's paying $1500 and its interest.   But the answer to this is, that Lesley *took the risk* of the sufficiency of the Fleming farm as a security for the $3000, with the interest after the date the agreement.   Doubtless it was the object of the arrangement to secure to Lesley the $4500 ; but it is clear that he considered the Fleming farm at $3000, and future interest, with the Schock mortgage for $1500, ample security, and was willing to rely upon it and to relinquish as he most expressly did the interest in arrear.   Having done so he must abide the consequences.

Again the decision of the Court of Appeals, in the former suits, was relied on as affirming Lesley's right to

the entire fruit of this mortgage, including the interest in arrear, if needed, to make up his whole claim the $4500 and its interest.    I cannot so read that decision.

The controversy in those cases did not touch the accrued interest or the $405.    No allusion is made to it in the decision of the Court nor was any point ruled which covers it.    What the Court, decided was (1) that Schock should not use the power to collect the first three installments of the Fleming mortgage by execution, but that Schock should use the power only to obtain voluntary payments ; and (2) the construction, which the Court gave to the agreement, was, in effect, that, should the mortgage be ultimately collected, Shock could receive nothing back of the $1500 he had paid, except such surplus as there might be after satisfying Lesley's whole claim.    But this ruling applied only to the $1500.    The Court had before them no question as to the $405, and their statement in general terms that the whole debt and interest must be satisfied to Lesley, before Schock's claim, must be taken to refer to the claim then before them, which was for the $1500.

I do not feel the slightest doubt that, under the true construction of the agreement and the understanding of the parties, this accrued interest of $405 was to remain Schock's as fully as if no assignment had been made, and such must be the decree.    There are, however, some credits against it for sums which Schock has heretofore received.    It appears from the bill that Schock received from Fleming $150 of this interest in October 1859.    He was also credited, under the Chancellor's decree of March, 1860, with $96 which Lesley had collected from Fleming, making $246, and leaving a balance of $159.    These two payments were credited to Fleming in the *scire facias* on his mortgage ; and the balance $159 was included in the judgment, as Lesley in his answer admits.    This sum is therefore in his hands, and Schock is entitled to receive

it with interest from the settlement of the Sheriff to Lesley. A claim was made for Lesley to be allowed against this $159 the costs of the former suits alleged to have been unpaid by Schock. What part of those costs are unpaid was left in doubt, but if any part remain unpaid I will on a proper application stay the collection of a like amount of the decree in this cause until the costs in the other causes shall be settled.